**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____
**DEIRDRE MARGUERITE ROGERS-HOWELL,**

                    **Plaintiff,**            5:14-cv-65
                                              (GLS)
            v.

**CAROLYN W. COLVIN,** Acting Commissioner of Social Security,

                    **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Olinsky Law Group<br>300 S. State Street<br>Suite 420<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ. |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261 | TOMASINA DIGRIGOLI<br>Special Assistant U.S. Attorney |
| Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | |

**Gary L. Sharpe**

**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Deirdre Marguerite Rogers-Howell challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Rogers-Howell's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. Background

On December 9, 2010, Rogers-Howell filed an application for DIB under the Social Security Act ("the Act"), alleging disability since October 22, 2009. (Tr.[1] at 88, 193-98.) After her application was denied, (*id.* at 95-98), Rogers-Howell requested a hearing before an Administrative Law Judge (ALJ), which was held on June 28, 2012, (*id.* at 45-87, 99). On August 24, 2012, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review.

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 10.)

(*Id.* at 1-6, 20-42.)

Rogers-Howell commenced the present action by filing her complaint on January 22, 2014 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 8, 10.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 12, 13.)

### III. Contentions

Rogers-Howell contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 12 at 10-18.) Specifically, Rogers-Howell claims that the ALJ erred in failing to: (1) properly evaluate the medical opinion evidence; (2) adequately assess her subjective complaints; and (3) obtain the testimony of a vocational expert (VE). (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 13 at 6-15.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 12 at 2-9; Dkt. No. 13 at 2.)

### V. Standard of Review

3

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Evaluating Medical Opinion Evidence

First, Rogers-Howell argues that the ALJ's residual functional capacity (RFC)[2] determination is not supported by substantial evidence[3] due to the ALJ's failure to properly evaluate the medical opinion evidence. (Dkt. No. 12 at 10-15.) Specifically, Rogers-Howell contends that the ALJ failed to reconcile his mental RFC determination with the opinion of non-

---

[2] A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

4

examining medical expert L. Meade, and should have requested clarification from consulting examiner Muhammed Toor in order to properly determine her physical RFC. (*Id.*) The Commissioner counters, and the court agrees, that the ALJ properly evaluated the medical evidence in determining Rogers-Howell's RFC. (Dkt. No. 13 at 6-10.)

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c).

Here, the ALJ determined that, due to post-concussive syndrome,

mild degenerative disc disease of the low back and right knee, and obesity, Rogers-Howell was limited to lifting and carrying twenty pounds occasionally and ten pounds frequently, standing or walking for six hours in a workday, and sitting for six hours in a work day. (Tr. at 33.) The ALJ further concluded that Rogers-Howell needed to avoid working at unprotected heights, working around moving machinery, driving a motor vehicle, and concentrated exposure to respiratory irritants. (*Id.*) In addition, the ALJ limited Rogers-Howell to unskilled work. (*Id.*) In making this determination, the ALJ relied on the medical opinions of Drs. Toor and Meade. In particular, Dr. Toor opined that Rogers-Howell was not limited in her ability to sit, but was moderately limited in her ability to stand for prolonged periods, climb, push, pull, and lift or carry heavy objects. (*Id.* at 428.) Dr. Toor also recommended that Rogers-Howell avoid respiratory irritants due to her history of asthma. (*Id.*) According to Dr. Meade, despite her history of head trauma and adjustment disorder with mixed features, Rogers-Howell was capable of performing the mental demands of unskilled work[4] and some skilled work. (*Id.* at 430-31, 433, 438, 446.)

---

[4] "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4 (1985).

6

First, contrary to Rogers-Howell's suggestion, the ALJ's RFC determination is clearly supported by Dr. Meade's opinion. (Dkt. No. 12 at 10-13; Tr. at 446.) Although Dr. Meade indicated that Rogers-Howell suffered moderate limitations in her ability to maintain attention and concentration for extended periods, complete a normal workweek and perform at a consistent pace, and travel in unfamiliar places, he ultimately concluded that she was capable of performing unskilled and some skilled work. (Tr. at 444-46.) Further, while Dr. Toor's opinion uses the word "moderate" to describe Rogers-Howell's physical limitations, his thorough examination findings in addition to his medical source statement provide substantial evidence for the ALJ's conclusion that Roger's Howell can perform light work.[5] *See Kinder v. Colvin*, No. 13-CV-06368, 2014 WL 4184820, at *7 (W.D.N.Y. Aug. 21, 2014); *Armstrong v. Comm'r of Soc. Sec.*, No. 05-CV-1285, 2008 WL 2224943, at *4 n.6 (N.D.N.Y. May 27, 2008). In addition, Rogers-Howell has only received conservative treatment for her back and knee pain, including pain medication and physical therapy. (Tr. at 338-39, 458-69, 475-76, 478-81, 484-85, 488-89.)

---

[5] Under the regulations, light work requires lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds. *See* 20 C.F.R. § 404.1567(b). Further, "the full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday." SSR 83-10, 1983 WL 31251, at *6 (1983).

She first sought treatment for low back and leg pain in May 2010. (*Id.* at 338-39.) At this time, an examination revealed paraspinal tenderness, but straight leg raising was negative bilaterally. (*Id.* at 339.) Rogers-Howell did not seek treatment again for her back and leg pain until July 2011. (*Id.* at 484-85.) Her most recent treatment records, in April 2012, indicate that her knee was "not doing badly," but her low back was painful. (*Id.* at 458.) Her physical examination revealed reduced range of motion of her lumbar spine and increased lumbar lordosis with a persistent lordosis with forward flexion. (*Id.*) Considering Dr. Toor's opinion and examination results, as well as Rogers-Howell's treatment history, the ALJ's RFC determination is supported by substantial evidence.

**B.     Credibility Determination**

Next, Rogers-Howell complains that the ALJ failed to evaluate the credibility of her subjective complaints under the appropriate legal standard. (Dkt. No. 12 at 15-17.) According to Rogers-Howell, the ALJ improperly penalized her for enduring pain in order to perform basic daily activities. (*Id.* at 16.) Additionally, Rogers-Howell claims that the ALJ erred in drawing inferences from her failure to seek or pursue regular medical treatment, without first considering any explanations for such failure. (*Id.* at

16-17.)  Lastly, Rogers-Howell argues that the ALJ failed to offer good reasons for discounting the testimony of her husband.  (*Id.* at 17.)  The court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted).  In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements."  SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996).  Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms."  *F.S. v. Astrue*, No. 1:10-CV-

444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ concluded that Rogers-Howell's testimony concerning the intensity, persistence, and limiting effects of her symptoms was only "partially credible." (Tr. at 33.) Specifically, the ALJ considered Rogers-Howell's daily activities, treatment records, and the medical opinions of record. (*Id.*); *See* 20 C.F.R. § 404.1529(c)(3)(i), (v), (vii). The ALJ noted the significant gaps in her treatment history, the minimal clinical findings on examination, and her improvement with physical therapy. (Tr. at 33.) With respect to her daily activities, Rogers-Howell acknowledged that she cared for her personal hygiene, dusted and vacuumed, cleaned dishes, walked to her mailbox and across the road to visit with a friend, talked on the phone, watched television, cared for her cat, and went "out to get food." (*Id.* at 63-64, 422, 426.) While these activities alone do not create an independent basis for finding Rogers-Howell not credible, taken as a whole, the ALJ's credibility determination is not "patently unreasonable." *Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." (internal

quotation marks and citation omitted)).

With respect to the gaps in Rogers-Howell's medical treatment history, an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p, 61 Fed. Reg. at 34,487. Although an adjudicator should "first consider[] any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment," *id.*, here Rogers-Howell does not offer any explanation, or point to any evidence that may explain her failure to seek medical treatment for the persistent pain, cognitive problems, and psychiatric problems of which she complains. (Dkt. No. 12 at 16-17.) Although Social Security Ruling 96-7p provides that "[t]he adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner," 61 Fed. Reg. at 34,487, the court concludes that the ALJ was not obligated to supplement the record here. Whatever her reasons for failing to seek treatment, this does not alter the fact that her treatment notes contain few clinical findings and

11

reflect conservative treatment. (Tr. at 338-39, 458, 475-76, 478-79, 484-85, 488-89) Moreover, when asked to rate her back and leg pain on a scale from one to ten, Rogers-Howell often indicated mild to moderate pain. (*Id.* at 475, 484, 494, 497.)

Finally, the ALJ considered the testimony of Rogers-Howell's husband, and discounted it because it was inconsistent with the medical opinions of record. (*Id.* at 33.) This determination is also supported by substantial evidence. In particular, Rogers-Howell's husband testified that she experiences concentration and memory problems that affect her ability to prepare meals, watch movies, and take her medication properly. (*Id.* at 81-82.) However, whenever tested on examination, Rogers-Howell's memory and concentration was found to be intact. (*Id.* at 421-22, 485, 489, 501.) Further, consulting examiner Jeanne Shapiro opined that Rogers-Howell could follow simple instructions and perform simple and some complex tasks, and Dr. Meade concluded that Rogers-Howell could maintain the attention and concentration necessary for unskilled and some skilled work. (*Id.* at 422, 446.)

**C.** **VE Testimony**

Finally, Rogers-Howell contends that the ALJ was obligated to obtain

the testimony of a VE to determine, at step five of the sequential evaluation, whether other work which Rogers-Howell can perform exists in significant numbers in the national economy. (Dkt. No. 12 at 17-18.) According to Rogers-Howell, because there is substantial evidence that she suffers mental impairments, which would interfere with her ability to perform work-related tasks, the ALJ should have obtained VE testimony to determine the extent to which the occupational base was eroded. (*Id.*) Again, the court disagrees. As discussed above, the ALJ's RFC determination was sound and supported by substantial evidence. Thus, it was unnecessary to consult a VE because the ALJ found that Rogers-Howell's nonexertional limitations "ha[d] very little effect on the size of the remaining occupational base for unskilled light work."[6] (Tr. at 35-36.)

D. **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

---

[6] Reliance on the Medical-Vocation Guidelines is improper "when a claimant's nonexertional impairments significantly diminish h[er] ability to work—over and above any incapacity caused solely from exertional limitations—so that [s]he is unable to perform the full range of employment indicated by the" guidelines. *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986). Instead, where nonexertional impairments significantly diminish a claimant's ability to work, "the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Id*.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Rogers-Howell's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 27, 2015
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court